[Civ. No. 24788. Fourth Dist., Div. One. Sept. 21, 1983.]

OCEANSIDE COMMUNITY ASSOCIATION,
Plaintiff, Cross-defendant and Appellant, v.
OCEANSIDE LAND COMPANY et al.,
Defendants, Cross-complainants and Respondents;
PINE TREE MOTEL, INC.,
Defendant, Cross-complainant and Appellant.

---

**COUNSEL**

R. Gene Steineckert, Cynthia J. Glancy and Sternberg, Eggers, Kidder & Fox for Plaintiff, Cross-defendant and Appellant.

Newton & Newton and Jerry L. Newton for Defendant, Cross-complainant and Appellant.

Nicholas C. Banche, Elena G. Bardellini and Daubney & Banche for Defendants, Cross-complainants and Respondents.

## OPINION

**STANIFORTH, Acting P. J.**—This appeal is from the denial of a mandatory injunction to restrict land adjacent to a residential development to use as a golf course, the grant of an equitable lien on the property for $9,320 for each month the course was not in the process of being renovated or maintained, and the dismissal of a party.

### FACTS

Oceana is a 13-unit residential development composed of 932 residences on individual lots and common areas (central club house, swimming pool, recreation areas, administrative offices, streets, walks, covered parking and landscaped areas). The Oceanside Community Association (Homeowners Association) leases the common areas from the Oceanside Land Company (Developer) and assesses its homeowner members for their individual share of the lease.

In September 1965, Developer offered to include a promised golf course in the common area of Oceana, but the homeowners (units I through IV) turned down the offer by a decisive vote at a meeting called by the Homeowners Association. Following this rejection, Developer recorded a declaration of covenants, conditions and restrictions (CC&Rs) on October 13, 1965, restricting certain property adjacent to Oceana to be used as a golf course for 99 years. The CC&Rs stated they created a covenant running with the land and the restriction was imposed "as heretofore agreed with past purchasers" of units I through IV. Under the CC&Rs homeowners were entitled to play at 75 percent of the rate charged the public and given the right to release the golf course restriction upon a favorable vote of three-fourths of the homeowners.

Developer built the golf course and operated it for several years. Developer's salespersons used the golf course as an inducement to new purchasers. A reference to the CC&Rs was included in the deeds of these purchasers. All the units were completed by 1971.

In November 1970, Developer sold the golf course to the Smiths, taking back a promissory note for $50,000 secured by a deed of trust on the property. The Smiths operated the golf course until December 1976 at which time they sold the property to Career Knowledge Institute, Inc. (Career Institute) and its president, Phil Plies. Plies gave the Smiths a promissory note for $64,253.86 secured by a deed of trust.

Plies did not maintain the golf course. In April 1977 Homeowners Association filed a complaint for damages and injunctive relief against Developer to enforce the covenant. Meanwhile, Oceana residents, through their men's and women's clubs, maintained the golf course as best they could by hooking up sprinklers to nearby homes, mowing and weeding. When Plies barricaded the entrance and locked up their equipment, the homeowners obtained a court order to allow them to maintain the course. In the fall of 1978, due to lack of funds and inability to keep up the quality of the course, the homeowners abandoned their efforts.

In May 1977, Plies defaulted, causing both the Smiths and Developer to file notices of default. Pine Tree Motel, Inc. (Pine Tree) purchased Smiths' note for $30,000, paid off Developer and in July 1978 purchased the golf course property at the foreclosure sale with Smiths' note. However, from July 21, 1978, to August 5, 1980, Pine Tree's title was clouded due to bankruptcy actions filed by Career Institute and Plies. Pine Tree offered to lease the golf course to Oceana residents but they declined. Pine Tree did not maintain the course.

When Homeowners Association filed suit, Developer cross-complained for indemnity from its purchasers—the Smiths, Career Institute and Plies, and Pine Tree. Pine Tree cross-complained against Developer, asserting the covenant was merely a personal obligation made by Developer and did not run with the land.

Upon Developer's motion, the legal and equitable issues were severed, with trial first on the issue of whether a mandatory injunction should issue. At the end of Homeowners Association's case, the trial court dismissed Developer and the Smiths from the equitable action based on its finding the covenant ran with the land and neither Developer nor Smiths breached the covenant while they owned the property. Over its objection, Pine Tree was added as a defendant.

Upon the trial's conclusion, the court found a mandatory injunction to maintain the golf course would be inequitable, but did impose an equitable lien upon the property accruing at the rate of $9,320 per month in favor of Homeowners Association.[1]

## DISCUSSION

### I

The issues on appeal are whether the covenant runs with the land, the injunction should have been granted, the lien was inequitable and the Developer should have been dismissed.

---

[1] $10 times the number of Oceana residents (932).

For a covenant to run with the land and bind subsequent purchasers, it must meet the statutory requirements. (Civ. Code, § 1461.) The two applicable statutes in this case are Civil Code sections 1462 and 1468.

■ Civil Code section 1462 requires the covenant be "contained in a grant" conveying the property and "for the direct benefit of the property." Here, the recorded covenant was referred to in the deeds from Developer to all grantees in Oceana units V through XIV[2] and in the deeds from Developer to the Smiths and from the Smiths to Career Institute and its president. That clauses of the covenant were omitted in the deeds is not fatal because it is sufficient notice where the deeds incorporate by reference or make reference to covenants or restrictions of record. (*Riley* v. *Bear Creek Planning Committee* (1976) 17 Cal.3d 500, 507 [131 Cal.Rptr. 381, 551 P.2d 1213]; *Childs* v. *Newfield* (1934) 136 Cal.App. 217, 219 [28 P.2d 924].) Here Developer recorded the CC&Rs before deeding the properties and made reference to restrictions "of record, if any" in the deeds.[3]

The covenant benefited Oceana property but burdened Developer's property. Under California Supreme Court decisions narrowly applying section 1462, a covenant which *burdens* property does not run with the land. (*Marra* v. *Aetna Construction Co.* (1940) 15 Cal.2d 375, 378 [101 P.2d 490]; *Los Angeles etc. Co.* v. *S. P. R. R. Co.* (1902) 136 Cal. 36 [68 P. 308].) Since the covenant sought to be enforced here is a burden, it will not run under section 1462.

■ In contrast, both burdens and benefits may be enforced under Civil Code section 1468.[4] To come within this section, the following requirements must be met: (1) the covenant must concern some act on the covenantor's property; (2) the covenant must be for the benefit of the covenantee;

---

[2]In numbering the units, number XIII was omitted.

[3]The phrase "if any" would not negate constructive knowledge.

[4]Civil Code section 1468 was amended in 1968 and 1969. As amended, section 1468 requires: (1) the benefited and burdened lands must be particularly described in the instrument creating the covenant, either a deed between grantor and grantee or an agreement between landowners, (2) the covenantor's successors must be expressly bound for the benefit of the covenantee's land, (3) the covenant must concern the use, repair, maintenance, or improvement of the property or the payment of taxes and assessments and (4) the agreement must be recorded. (See Steverson, *Covenants and Equitable Servitudes in California* (1978) 29 Hastings L.J. 545, 563.)

The covenant in this case was made in 1965, before the amendments to section 1468. Under the "established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent" (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159]; accord, *Werner* v. *Graham* (1919) 181 Cal. 174, 183 [183 P. 945]), section 1468 must be applied as it read in 1963.

(3) the covenant must state it is binding on the assigns of the covenantor, and (4) the covenantor and covenantee must be owners of the land at the time the covenant is made. (Civ. Code, § 1468; see *Covenants and Equitable Servitudes, supra,* 29 Hastings L.J. 545, 559.)

The covenant readily fulfills the first three requirements: (1) the covenant requires a golf course be operated on the covenantor's property; (2) the covenant benefits the covenantees by increasing property value and recreational benefits; and (3) the covenant specifically states that assignees are bound.

Pine Tree contends the fourth requirement is not met because the covenant was not *between* land owners, but a unilateral act of the Developer for the inducement of future purchasers. While it is true the CC&Rs state they are for the benefit of future purchasers, they also state the covenant was made pursuant to an agreement between Developer and the existing landowners in Oceana (units I through IV). The CC&Rs merely represent the reduction of that agreement to writing. It does not become a unilateral act simply because Developer was the party who actually wrote the CC&Rs and recorded them. There is no requirement that both parties sign the covenant for it to be enforceable. (*Chandler* v. *Hart* (1911) 161 Cal. 405 [119 P. 516].)

Pine Tree also contends the covenant is personal and therefore does not bind it as grantee. ■ A personal covenant is one that by its nature is a mere personal undertaking, and not intended to have any binding effect beyond the immediate parties to the instrument. (*Lyford* v. *North Pac. Coast R. R. Co.* (1891) 92 Cal. 93 [28 P. 103].) ■ Contrary to Pine Tree's contention, the evidence shows an intention to bind successors by the express terms of the CC&Rs stating the covenant was to run with the land and bind successors, by the length of the restriction on the land (99 years) and by the testimony establishing the original covenanting parties understood the land was to be burdened, not that Developer was promising to maintain a golf course for 99 years.

The covenant here meets all the conditions of Civil Code section 1468; thus Homeowners Association, on behalf of the Oceana owners of units I through IV, may enforce the covenant.

II

■ As to owners of units V through XIV and their transferees, the covenants are enforceable as equitable servitudes. ■ Even when a cov-

enant does not run with the land, it may be enforced against a transferee of the covenantor who takes with knowledge of its terms[5] if it would be inequitable to permit him to avoid the restriction.[6] (*Marra v. Aetna Construction Co., supra,* 15 Cal.2d 375, 378.) Enforcement of these servitudes prevents unjust enrichment. Presumably, a purchaser who purchases land knowing it is burdened with a covenant will negotiate for a lower purchase price. To allow the purchaser to receive the benefit of the reduced price without the corresponding burden would constitute unjust enrichment at the expense of his neighbor who was relying on enforcement of the servitude. (See Urban, *An Evaluation of the Applicability of Zoning Principles to the Law of Private Land Use Restrictions* (1974) 21 U.C.L.A. L.Rev. 1655, 1658.)

Pine Tree had both actual and constructive knowledge: actual knowledge from the Smiths telling Pine Tree the land was restricted to golf course use; constructive knowledge[7] by recordation of the CC&Rs and reference to them in Smiths and Career Institute/Plies deeds.[8]

The trial court here found it would be inequitable to allow Pine Tree to escape the restriction. No abuse of discretion appears to fault that conclusion.[9]

### III

The decision to grant or deny an injunction lies within the sound discretion of the trial court; its decision will not be disturbed on appeal absent an abuse of discretion. (*Union Interchange, Inc. v. Savage* (1959)

---

[5]Pine Tree's reliance on *Werner v. Graham, supra,* 181 Cal. 174, for the proposition that an equitable servitude may be created only by deed, is misplaced. As explained in *Hudson Oil Co. v. Shortstop* (1980) 111 Cal.App.3d 488, 495 [168 Cal.Rptr. 801], *Werner* only required the restriction be in a written instrument. The *Werner* court limited its language to "deed" because that was the only written instrument applicable under the facts.

[6]Contrary to Pine Tree's contention, *Trahms v. Starrett* (1973) 34 Cal.App.3d 766 [110 Cal.Rptr. 239], does not state the applicable rule for the equitable servitude involved here. *Trahms* involved mutually enforceable equitable servitudes imposed pursuant to a general plan in a subdivision. (See *Marra v. Aetna Construction Co., supra,* 15 Cal.2d 375.)

[7]The fact Pine Tree bought the property at a foreclosure sale does not mean it took free of the covenant. A purchaser takes only the title the trustee had and subject to prior recorded instruments. The purchaser takes free only of those defects of which it had no knowledge. The CC&Rs here were senior to the foreclosed liens and Pine Tree did have knowledge. (See generally Miller & Starr, Current Law of Cal. Real Estate, § 3:121.)

[8]Pine Tree may not now assert the property is not bound by the golf course restriction due to a discrepancy between the land's description in the CC&Rs and the Smiths' deed since Pine Tree failed to raise the issue at trial. (*Damiani v. Albert* (1957) 48 Cal.2d 15, 18 [306 P.2d 780]; *People v. Harris* (1977) 73 Cal.App.3d 76, 83 [140 Cal.Rptr. 697]; *Abbott v. Cavalli* (1931) 114 Cal.App. 379, 383 [300 P. 67].)

[9]See IV, *infra,* for further details of evidence supporting the trial court's conclusion.

52 Cal.2d 601, 606 [342 P.2d 249].) ▇ The trial court denied the injunction based upon this evidence: By the time Pine Tree acquired the property, the golf course was already badly deteriorated. At the time of trial the estimated cost to restore the course properly was $400,000, or $200,000 if it was done cheaply. The trial court concluded it was not economical for Pine Tree to renovate the course in light of its investment. Additionally, the trial court believed it would be inequitable to hold Pine Tree personally liable (by issuing the injunction) for damage which occurred before it acquired the property and during that time when its title was clouded by Career Institute and Plies. The court was cognizant of the complicated nature of restoring a golf course and of the court supervision necessary to carry out such a decree. Under these circumstances, the trial court's denial of the mandatory injunction was not an abuse of discretion.

From the denial of the mandatory injunction by the trial court, the conclusion does not follow that no equitable remedy is available for the Oceana homeowners. ▇ An equity court has broad powers to fashion a remedy. (*Wuest* v. *Wuest* (1942) 53 Cal.App.2d 339, 347 [127 P.2d 934].) It may create new remedies to deal with novel factual situations. (*Roman* v. *Ries* (1968) 259 Cal.App.2d 65, 70 [66 Cal.Rptr. 120].) Further, the court is not strictly limited to the particular relief requested in the prayer of the complaint. (*Sears* v. *Rule* (1945) 27 Cal.2d 131, 148-149 [163 P.2d 443], cert. den. 328 U.S. 843 [90 L.Ed. 1617, 66 S.Ct. 1022].)

## IV

▇ The trial court, although deciding it would be inequitable to hold Pine Tree personally responsible for renovation of the golf course decided it also would be inequitable to completely release the land of its burden. The court found Pine Tree took with full knowledge of the restriction; Oceana homeowners had a substantial interest in the property and were losing substantial benefits each month the land was not maintained as a golf course. The trial court concluded that since each of the 932 Oceana residences were losing at least $10 in benefits each month, it would impose an equitable lien against the land of $9,320 (932 residences multiplied by $10) each month the land was not in the process of being renovated or maintained as a golf course. Oceana homeowners were granted the right to foreclose the lien whenever these conditions were not met.

Pine Tree contends the equitable lien is inconsistent with the factual findings. This contention is without merit. The findings support the existence of a covenant running with the land and an equitable servitude and the Oceana homeowners' need for an equitable remedy. That the trial court

chose to enforce the covenant through an equitable lien imposed upon the land rather than by a mandatory injunction directed against Pine Tree was within its discretion.

Nor is there any merit to Pine Tree's argument the equitable lien was improper since it was not specifically set forth in the prayer for relief. Equity is not limited in scope or type of relief which may be granted. Equitable remedies may be molded by the exigencies of each case. (*Curtin* v. *Department of Motor Vehicles* (1981) 123 Cal.App.3d 481, 486 [176 Cal.Rptr. 690].) The case cited by Pine Tree, *Mock* v. *Shulman* (1964) 226 Cal.App.2d 263 [38 Cal.Rptr. 39], does not support its contention that the scope of the pleadings strictly limits the equitable remedies available. In *Mock,* the court found a line of trees on defendant's property violated a covenant prohibiting hedges over six feet high. Plaintiffs prayed for $500 in past damages and an injunction or, in the alternative, damages " '. . . for past, present and future invasion of rights, if any.' " (*Id.,* at p. 270.) The trial court issued the injunction, awarded $500 for past damages and $500 per month in future damages in the event defendants failed to obey the injunction. The appellate court reversed the $500 per month in future damages because the award was speculative, unrelated to past damages, requested only in the alternative and, if additional damages were warranted in the future, plaintiffs could come back to court. While the appellate court noted plaintiffs neither pleaded nor tried the issue of future damages, what was crucial to the appellate court's reversal was that plaintiff's prayer was satisfied by issuance of the injunction since future damages were requested only in the alternative. In contrast, here the trial court imposed the equitable lien in lieu of the injunction.[10] The relief comes within the scope of the pleadings since it is also an equitable remedy and like the injunction prayed for, is coercive. (See *Sears* v. *Rule, supra,* 27 Cal.2d 131.)

## V

 The trial court properly dismissed Developer and the Smiths from the trial on the issue of a mandatory injunction. Generally, after the covenantor transfers the land and his or her successor becomes liable on the covenant, the covenantor is relieved from further obligation. An exception occurs when the parties intend a continuing personal obligation by the covenantor.[11] (3 Witkin, Summary of Cal. Law (8th ed. 1973) p. 2078; Rest.,

---

[10]Contrary to Pine Tree's assertion, the equitable lien imposed by the court is not damages. Damages would be a money judgment against Pine Tree payable to Homeowners Association directly.

[11]Whether a covenant is personal or runs with the land is irrelevant when the original covenantor and covenantee still own the land since enforceability is based on the contract upon which there is personal liability. Here, since the original covenantor is not in possession, the covenant is necessarily being enforced against a successor.

Property, § 538.) The rationale behind relieving a covenantor of liability, in the absence of a continuing personal obligation, upon transfer of the subject land is that the covenantor loses control over the property and therefore generally lacks the ability to perform the covenanted act. (Rest., Property, § 538.) Further, a covenant running with the land is treated as part of the estate, appurtenant to it, and therefore, the covenant and its obligation passes with conveyance of the property. (Rest., Property, § 538.)

The intent of the parties in making a contract may be established by extrinsic evidence. (*Moss Dev. Co.* v. *Geary* (1974) 41 Cal.App.3d 1, 9 [115 Cal.Rptr. 736].) When extrinsic evidence is relied upon to establish the parties' intent, this court must accept the trial court's determination if it is supported by substantial evidence. (*Salyer Grain & Milling Co.* v. *Henson* (1970) 13 Cal.App.3d 493, 500 [91 Cal.Rptr. 847].)

Here, the trial court relied upon a wealth of extrinsic evidence as to the intention of the parties in making and recording the CC&Rs. There were memos between Developer and Homeowners Association stressing that the land rather than the Developer was burdened. A memo from Homeowners Association discussing the sale to the Smiths recognized although Developer would not control the land following the sale, the land would be burdened, and the Oceana homeowners' interests thus protected. Under the original plan the Developer had no obligation to maintain the golf course because it was part of the Oceana common areas maintained by Homeowners Association. The Developer obtained no right of reentry in the conveyance to the Smiths in the event the Smiths breached the covenant. Finally, the Oceana residents testified they understood there was an obligation impressed upon the land rather than upon Developer. From the foregoing evidence, the trial court concluded there was no intent to impose a continuing personal obligation upon Developer to maintain the golf course after it transferred the property. This conclusion is supported by substantial evidence.

The judgment is affirmed.

Work, J., and Joseph, J.,* concurred.

A petition for a rehearing was denied October 21, 1983, and the petition of appellant Pine Tree Motel, Inc., for a hearing by the Supreme Court was denied November 23, 1983.

---

*Assigned by the Chairperson of the Judicial Council.