[Civ. No. 26969. Fourth Dist., Div. One. Apr. 12, 1984.]

JAMES T. McCAFFREY et al., Plaintiffs and Appellants, v. STANLEY R. PRESTON et al., Defendants and Respondents.

**COUNSEL**

Kenneth H. Lounsbery for Plaintiffs and Appellants.

Feist, Vetter, Knauf & Loy, Raymond F. Feist, Sr., Alan H. Burson, John K. Van de Kamp, Attorney General, Anne S. Pressman and Donald A. Robinson, Deputy Attorneys General, Lloyd M. Harmon, Jr., County Counsel, and Arlene Prater, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

COLOGNE, J.—James T. McCaffrey, Grace McCaffrey, Burnet F. Wohlford III, Betty M. Wohlford, Edward R. Hood, Margaret A. Hood, Clar-

ence C. Sikes, June E. Sikes, Thomas E. Vos, Lynda M. Vos, Richard D. Malm, Mary E. Malm, Donn C. Alexander, Peggy A. Alexander and Dorothy C. Jeffers (neighbors of the respondents Stanley R. Preston and Wilma Preston) and Donald Graham, executor of the estate of the common grantor, Harry Hoffman, appeal a judgment denying them a permanent injunction against the Prestons' operation of a residential care facility for six or fewer persons in the Rose Hill neighborhood.

The land now comprising the Rose Hill neighborhood near Escondido, California, was originally owned by Allie W. and Harry Hoffman. From 1960 to 1961 they sold three large parcels and retained a relatively small parcel for their personal residence. All of the Hoffman deeds contained a provision which, in pertinent part, states: "1. This property shall be used for single residential purposes only . . . . [A] breach of any of the foregoing conditions and restrictions shall cause the premises to revert to grantors, their heirs or assigns, each of whom respectively shall have the right of immediate entry upon the premises in the event of such breach."

Kenneth C. and Helen Moore Purdy bought one of the three parcels from Hoffman, divided it into four lots and sold all four lots by deeds which omitted any restrictions or references to any restrictions. Conrad and Marion Donald bought one of these four lots and in turn divided it into two lots one of which they sold to the respondents Stanley R. and Wilma Preston. This deed did not contain any restrictions or references to any restrictions.

Hoffman continued living on his retained parcel until 1976, when he sold it without deed restrictions or references to deed restrictions to Mr. Snyder.

In February 1980, the Prestons applied for a license to operate a community care facility in their home for six or fewer elderly persons pursuant to the Community Care Facilities Act (Health & Saf. Code,[1] § 1500 et seq.). When the neighboring appellants learned of the Prestons' intent to operate a community care facility, they protested the issuance of the license and requested notice of administrative proceedings and an opportunity to be heard. Their request was denied. Following an investigation by the San Diego County Department of Social Services,[2] the Prestons were issued a license on April 17, 1980, permitting two elderly persons.

On April 30, 1980, appellants filed the instant action. A temporary restraining order was issued on that date and a preliminary injunction was

---

[1] All statutory references are to the Health and Safety Code unless otherwise specified.

[2] At the time the Prestons applied, licensing was handled by the county social services department pursuant to state guidelines. The state has since taken over the licensing function.

issued on May 30, 1980, enjoining the Prestons from operating a residential care facility in their home.

In May or June 1980, before Hoffman became a plaintiff, Wilma Preston requested him to sign a quitclaim deed in favor of the Prestons. Hoffman declined to sign the quitclaim deed until he consulted with his attorney. Later, Wilma Preston obtained the name of Hoffman's attorney from him and forwarded that information to her attorney who then forwarded the quitclaim deed to Hoffman's attorney. Hoffman and his attorney later met and Hoffman executed the quitclaim deed in favor of the Prestons.

Trial commenced on October 14, 1981. The trial court found appellants could not enforce the restrictive covenant because it was a personal covenant, enforceable only through Hoffman's reversionary interest which had been extinguished by the quitclaim deed. The court further found the Community Care Facilities Act (Act) was not unconstitutional.

On appeal, appellants assert the Act is unconstitutional because it violates equal protection and due process, the covenants were not personal, the quitclaim deed was invalid and the trial court erred in certain evidentiary rulings.

The Act (§ 1500 et seq.) was enacted in 1973. In a statement of its intent, the Legislature found there was "an urgent need to establish a coordinated and comprehensive statewide service system of quality community care for the mentally ill, developmentally and physically disabled, and socially dependent children and adults" (§ 1501, subd. (a); Stats. 1973, ch. 1203, § 4, p. 2581).

A "community care facility" includes a "residential care facility for the elderly" which is defined as a "group housing arrangement chosen voluntarily by residents who are over 62 years of age and who are provided varying levels of supportive services or care, as agreed upon at the time of admission, based upon their varying needs." (§ 1502, subd. (a)(2).) Such a residential care facility also is within the scope of the definition of a "residential facility" which means "any family home, group care facility, or similar facility determined by the director, for 24-hour nonmedical care of persons in need of personal services, supervision, or assistance essential for sustaining the activities of daily living or for the protection of the individual." (§ 1502, subd. (a)(1).) The Legislature expressly found "it is the policy of this state that each county and city shall permit and encourage the development of sufficient numbers and types of residential care facilities as are commensurate with local need." (§ 1566.)

To effectuate this policy, the Legislature enacted provisions specifically proscribing local regulation in locating these residential care facilities serv-

ing six or fewer persons.[3] It declared residential care facilities are to be treated the same as single family residences, thus negating the "business" features of any such facility which might preclude them from locating in compatible residential areas.

As section 1566.3, in pertinent part, states: "Whether or not unrelated persons are living together, a residential facility which serves six or fewer persons shall be considered a residential use of property for the purposes of this article. In addition, the residents and operators of such a facility shall be considered a family for the purposes of any law or zoning ordinance which relates to the residential use of property pursuant to this article.

"For the purpose of all local ordinances, a residential facility which serves six or fewer persons shall not be included within the definition of a boarding house, rooming house, institution or home for the care of minors, the aged, or the mentally infirm, foster care home, guest home, rest home, sanitarium, mental hygiene home, or other similar term which implies that the residential facility is a business run for profit or differs in any other way from a single family residence.

"The provisions of this section shall not be construed to forbid any city, county, or other local entity from placing restrictions on building heights, setback, lot dimensions, or placement of signs of a residential facility which serves six or fewer persons as long as such restrictions are identical to those applied to other single family residences.

". . . . . . . . . . . . . . . . . . .

"No conditional use permit, zoning variance, or other zoning clearance shall be required of a residential facility which serves six or fewer persons which is not required of a single family residence in the same zone."

I

Appellants' first contentions concern the constitutionality of the "Local Regulations" section (§ 1566 et seq.) of the Act, particularly section 1566.3. ■ Preliminarily, we note all intendments favor the exercise of the Legislature's plenary authority. Thus, if there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 180 [172 Cal.Rptr. 487, 624 P.2d 1215]). ■ In-

---

[3] "'[S]ix or fewer persons' does not include the licensee or members of the licensee's family or persons employed as facility staff." (§ 1566.)

validity must be clear and unquestionable before a statute can be declared unconstitutional (*Santa Catalina Island Conservancy* v. *County of Los Angeles* (1981) 126 Cal.App.3d 221, 238 [178 Cal.Rptr. 708]).

■■ ■■■ Appellants contend the "Local Regulations" part of the Act is unconstitutional, facially, in that it is arbitrary, capricious, discriminatory, irrational and denies equal protection under the law.[4]

■ There is no constitutional requirement of uniform treatment (*In re Ricky H.* (1970) 2 Cal.3d 513, 522 [86 Cal.Rptr. 76, 468 P.2d 204]). Legislative classification is permissible when made for a lawful state purpose and when the classification bears a rational relationship to that purpose (*McGowan* v. *Maryland* (1961) 366 U.S. 420, 425-426 [6 L.Ed.2d 393, 399, 81 S.Ct. 1101]; *Estate of Horman* (1971) 5 Cal.3d 62, 75 [95 Cal.Rptr. 433, 485 P.2d 785]). Wide discretion is vested in the Legislature in making the classification, and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary. A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it (*Sacramento M. U. Dist.* v. *P. G. & E. Co.* (1942) 20 Cal.2d 684, 693 [128 P.2d 529]).

■ The legislative classification here does bear a rational relationship to a legitimate state purpose.

The Act and its authorized regulations (Cal. Admin. Code, tit. 22, § 80000 et seq.) are a comprehensive state regulatory scheme (*Ocean House Corp.* v. *Permanent Rent Control Bd.* (1983) 147 Cal.App.3d 395, 397 [195 Cal.Rptr. 147]). The state plan is both procedural and substantive (*ibid.*). If the plan of regulation were treated as classical zoning, then it would be a municipal affair subject to local charter provisions inconsistent with state law (*City of Los Angeles* v. *Department of Health* (1976) 63 Cal.App.3d 473, 479-480 [133 Cal.Rptr. 771]). However, the local regulations section of the Act relates to providing residential facilities, including residential care facilities for elderly persons and, as such, relates to a social problem of statewide rather than local concern (*id.* at p. 480, construing Welf. & Inst. Code, § 5116, which provides that a family care home, foster home,

---

[4]The State Department of Social Services and its director contend appellants have no standing to raise the equal protection claim because they are not in the class discriminated against, i.e., operators of similar care facilities which are not treated as single family residences (see *Johnson* v. *Department of Social Services* (1981) 123 Cal.App.3d 878, 883 [177 Cal.Rptr. 49]). However, appellants *do* have a personal interest in the outcome of the litigation since they assert the classification of the entity affects their ability to challenge the use in their neighborhood, thus they have standing (see *Stocks* v. *City of Irvine* (1981) 114 Cal.App.3d 520, 531 [170 Cal.Rptr. 724]).

or group home with six or fewer patients shall be considered a single family residence housing a single family).

The primary purpose of section 1566 et seq. is to move people out of institutions into "normal" family-like surroundings, not to move institutions into residential neighborhoods. This policy is reflected in California Administrative Code title 22, section 81051: "It is the policy of the Department to encourage the development of licensed small family homes which serve as substitute homes for adults who are unable or do not wish to remain in their own homes. Such licensed homes should represent the range of locations, construction, family composition and family life to be found among similar homes within the general community. Adults to be admitted are those who can benefit from living in a homelike environment and take part in a family group."

Treating a residential care facility with six or fewer persons as a single family residence housing a single family is a rational method of effectuating this policy. The selection of a maximum of six persons represents a legislative determination that this was the maximum number who could reside in a residential care facility and yet have that facility retain its homelike character and the neighborhood its single family residential character. This determination is neither arbitrary nor irrational. As we stated in *Welsch* v. *Goswick* (1982) 130 Cal.App.3d 398, at page 408 [181 Cal.Rptr. 703]: "Recognizing that institutional care can seldom provide the kind of individualized support which can make the difference between productive self-actualization and unproductive stagnation, the Legislature has advocated the development of small community care facilities as a preferable alternative to hospitals, rest homes, and the like. (See § 1501.) These residences provide an alternative family structure offering the aid, encouragement and companionship necessary to help disabled persons realize their full potential. Given that purpose, we believe such facilities coincide with the traditional objectives and values associated with single-family residential neighborhoods."

■ Appellants contend the Act, particularly section 1566.3, is unconstitutional, facially and as applied, in that the enactments fail to provide for, and thereby deprive, notice and due process to property owners whose vested rights are significantly and adversely affected by the operation and application of the Act.

■ Due process principles require reasonable notice and opportunity to be heard before governmental deprivation of a significant property interest (*North Georgia Finishing, Inc.* v. *Di-Chem, Inc.* (1975) 419 U.S. 601, 605-606 [42 L.Ed.2d 751, 756, 95 S.Ct. 719]; *Beaudreau* v. *Superior Court*

(1975) 14 Cal.3d 448, 458 [121 Cal.Rptr. 585, 535 P.2d 713]). Procedural due process rules exist to minimize the risk of substantively unfair or mistaken deprivation of life, liberty or property by enabling persons to contest the basis on which the government proposes to deprive them of their protected interests (*Fuentes* v. *Shevin* (1972) 407 U S. 67, 81 [32 L.Ed.2d 556, 570, 92 S.Ct. 1983]). ■ However, only those governmental decisions which are *adjudicative* in nature are subject to procedural due process principles. *Legislative* action is not burdened by such requirements (*Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 612 [156 Cal.Rptr. 718, 596 P.2d 1134]).

■ Appellants argue the licensing of a residential care facility is an adjudicatory process and is among those "land use decisions which 'substantially affect' the property rights of owners of adjacent parcels" and thus constitutes a deprivation of property within the context of procedural due process (*Horn* v. *County of Ventura, supra,* 24 Cal.3d at p. 615).

While the licensing procedure here does involve an adjudication as to land in the sense that a license is granted to an individual at a specific location, it is not a land *use* decision. By definition, the use remains the same—single family residential, housing but a single family (§ 1566.3). The granting of a license changes neither the character nor the intensity of the use and thus is dissimilar to land use decisions where notice and an opportunity to be heard are constitutionally required.

Licensing a residential care facility is unlike granting a variance or conditional use permit since no nonconforming use is involved. Licensing is unlike a subdivision approval since no greater intensity of use is involved, the number of residents is limited by the number and size of the bedrooms, the same constraints which operate on a traditional family. Indeed, use may be even less intensive since the residents, nonstaff or family, are limited to a maximum of six.

Licensing a residential care facility is more like the issuance of a building permit in that the primary concern is the suitability of the proposed facility for occupancy by the residents rather than a concern for conformity with adjacent uses. As was noted by the court in *Horn* v. *County of Ventura, supra,* 24 Cal.3d 605, at page 616: "Defendant and real party also stress the danger that to hold subdivision approvals subject to notice and hearing requirements is too broad and sweeping a result, necessarily bringing in its train land use control devices, including the very issuance of building permits. We emphasize, however, that constitutional notice and hearing requirements are triggered only by governmental action which results in 'significant' or 'substantial' deprivations of property, not by agency decisions

that have only a de minimis effect on land. Nor would action involving only the nondiscretionary application of objective standards entitle a landowner to such protections."

Here, while we sympathize with appellants' concerns, there is by definition no "significant" or "substantial" deprivation of property affected by the licensing procedure since by legislative fiat this is the same type of use as the entire neighborhood enjoys, i.e., a single family residence. The character and intensity of use is no greater. (See *City of Chula Vista* v. *Pagard* (1981) 115 Cal.App.3d 785 [171 Cal.Rptr. 738].)

Moreover, if any property interests are deprived by locating a residential care facility in a single family residential neighborhood, the authority for granting this use is not the licensing procedure but the legislative action equating a residential care facility with a "single family residence" housing a "single family." As previously noted, legislative action is not subject to constitutional due process concerns.

## II

 Appellants next contend the trial court erred in striking the testimony of Richard Hartley. Hartley, a registered civil engineer, testified as to percolation tests he conducted in soils bordering the Prestons' property. He concluded the Prestons' property was unsuitable to handle increased septic system discharges. Appellants offered this testimony to show the significance of the impact of granting a residential care facility license upon appellants and to demonstrate there were important issues, bearing upon the licensing decision, which would have been revealed had the appellants been accorded notice and an opportunity to be heard.

Since we have concluded appellants had no right to notice and hearing prior to licensing the residential care facility, any error in striking this testimony was harmless.

## III

In their remaining points, appellants seek to prohibit the Prestons' residential care facility concluding the Hoffman deeds restricted use to residential only. They rely on the theory that either the Hoffman deeds created a covenant running with the land or an equitable servitude, or the reversionary interest was not validly quitclaimed to the Prestons.

 Appellants contend the court erred in excluding the written declarations of Hoffman. These declarations were offered to show Hoffman's

intent not to release the restrictions on the Rose Hill neighborhood when he executed the quitclaim deed in favor of the Prestons. These declarations were made after this suit was filed but before Hoffman became a plaintiff in this action.

The trial court here did permit both Donald Graham, Hoffman's nephew, and Neville Williams, Hoffman's attorney, to testify as to similar statements made by Hoffman to them. Thus, as admitted by appellants' attorney James E. Lund, the declarations were "probably cumulative" and any error in excluding them was harmless.

■ Appellants next contend the trial court's conclusion the quitclaim deed was valid was not supported by substantial evidence. They base this contention on evidence showing Hoffman did not intend to extinguish the residential restriction and thus the deed is invalid due to mistake of law and fact.

■ In resolving the issue of sufficiency of the evidence, we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party and to the judgment (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480]).

■ There was evidence presented that was "reasonable in nature, credible, and of solid value" (*Estate of Teed* (1952) 112 Cal.App.2d 638, 644 [247 P.2d 54]) on which to find the quitclaim deed valid. Wilma Preston explained to Hoffman why she wanted the deed at the time she first asked Hoffman to sign it. She explained the type of facility and testified Hoffman agreed it was a good idea but declined to sign until his attorney had reviewed the quitclaim deed. Hoffman's attorney did review the deed and Hoffman signed it in his attorney's office. The court's finding he knowingly conveyed to the Prestons his reversionary interest is supported by substantial evidence.

■ ■ ■ ■ ■ Appellants next contend the trial court erred in concluding the restrictive covenants were personal.[5] Appellants neither cite any authority nor make any argument for this contention.

---

[5]The deed restrictions here are phrased as conditions subsequent subject to a right of reentry. Whenever possible the law favors construing a condition as a personal covenant to avoid a forfeiture (*MacDonald Properties, Inc.* v. *Bel-Air Country Club* (1977) 72 Cal.App.3d 693, 699 [140 Cal.Rptr. 367]). The restrictions here may be reasonably construed as personal covenants in light of their language "the continuance of any such breach may be enjoined, abated or remedied by appropriate proceedings by such grantors, their heirs or assigns." Such language is more consistent with a covenant than with a condition subsequent.

Determination of whether a covenant is personal, runs with the land, or is enforceable as an equitable servitude rests upon the resolution of factual matters such as intent, notice and equitable factors. There is substantial evidence here to support the trial court's conclusion the residential only restrictions were personal.

First, the very phrasing of the restrictions lends credence to the trial court's decision the covenant was personal. The restrictions contain no language that particular land will be benefited—either property retained by Hoffman or conveyed by him—but only that there is a right of enforcement by Hoffman, his heirs and assigns.

Second, Hoffman sold his remaining parcel (on which he had his residence) in 1976, without restrictions, thus supporting the inference the restrictions were intended for his personal benefit while he lived in the Rose Hill neighborhood. Finally, Hoffman himself thought the restrictions were personal since he believed he could convey them separately from the underlying property.

Appellants presented evidence to show Hoffman did not intend to create merely a personal covenant, but rather, sought to establish residential restrictions throughout the Rose Hill neighborhood. However, mere subjective intent to have property burdened or benefited in any particular way does not mean a covenant running with the land or an equitable servitude is created. For a covenant to run with the land and bind subsequent purchasers, it must meet the statutory requirements in effect when the covenant was created (Civ. Code, § 1461; *Oceanside Community Assn.* v. *Oceanside Land Co.* (1983) 147 Cal.App.3d 166, 174, 175, fn. 4 [195 Cal.Rptr. 14]). Neither of the pertinent statutes is complied with here.

Under Civil Code section 1468, the covenantor and covenantee must be owners of land at the time the covenant is made; such was not the case here and thus the covenant does not run under section 1468.

Nor does the covenant run with the land under Civil Code section 1462 which governs covenants made between a grantor and grantee since, under case law narrowing the interpretation of section 1462, the burden of the covenant does not run (*Marra* v. *Aetna Construction Co.* (1940) 15 Cal.2d 375, 378 [101 P.2d 490]). Appellants seek to enforce a burden, a restriction to residential use, thus the covenant does not run under Civil Code section 1462.

Finally, the restrictions are not enforceable as mutual equitable servitudes under the theory of a common neighborhood plan or scheme.

 A general plan of real estate development can give rise to mutual equitable servitudes only when both the grantor and grantee intend that the land conveyed is to be restricted pursuant to a general plan, that intent appears in the deed, the parties' agreement shows the parcel conveyed is subject to restrictions in accordance with the plan for the benefit of all the other parcels in the subdivision and such other parcels are subject to like restrictions for its benefit, and the dominant and servient tenements are adequately shown (*Werner* v. *Graham* (1919) 181 Cal. 174, 183-185 [183 P. 945]; *Terry* v. *James* (1977) 72 Cal.App.3d 438, 442 [140 Cal.Rptr. 201]). If these conditions are met, the grantee of the first deed from the developer as well as subsequent grantees are entitled to enforce the covenants as to all the remaining area placed under equitable servitude (*Trahms* v. *Starrett* (1973) 34 Cal.App.3d 766, 771 [110 Cal.Rptr. 239]).

 Here, these conditions are not met. The dominant tenement was not adequately shown in that none of the Hoffman deeds specified what land was to be benefited by the restrictions. Additionally, there was no specification of a common neighborhood plan or scheme in that Hoffman did not promise to similarly burden the land he retained or conveyed. While a neighborhood plan or scheme possibly could be inferred from references in the restrictions to an architectural review committee and certain building restrictions, these conditions were largely ignored both by Hoffman and appellants and thus do not tend to support the creation or enforcement of equitable servitudes.

Judgment affirmed.

Brown (Gerald), P. J., and Butler, J., concurred.