[No. A072966. First Dist., Div. Five. Jan. 17, 1997.]

JENRON CORPORATION et al., Plaintiffs and Appellants, v.
DEPARTMENT OF SOCIAL SERVICES, Defendant and Respondent.

## COUNSEL

James Jay Saltzer and Albert J. Garcia for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Charlton P. Holland, Assistant Attroney General, Stephanie Wald and Amy J. Hertz, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**HANING, J.**—Appellants Jenron Corporation (Jenron), Francisco Sioson and his wife, Priscilla,[1] appeal the denial of their petition for writ of administrative mandate (Code Civ. Proc., § 1094.5) seeking review of respondent Department of Social Service's revocation of their adult residential care facility licenses and prohibiting them from licensure and/or employment in any facility licensed by respondent. We affirm.

### BACKGROUND

Since 1986 the Siosons have operated four adult residential care facilities licensed by respondent, and are the president and vice-president, respectively, of Jenron, their family corporation. Jenron is the licensee for the Siosons' Royal Guest Home (Royal), licensed in September 1988, and

---

[1]Solely for efficiency, Priscilla and Francisco Sioson will be referred to individually as Priscilla and Francisco.

Parkside Guest Home (Parkside), licensed in October 1991. Royal and Parkside initially served mentally disabled adult residents. Each facility is located in Concord and has a capacity for six residents.

Between 1989 and 1992 respondent cited Royal and Parkside for numerous violations, including inadequate food supplies, lack of staff training, unqualified staff, lack of required staff fingerprints and physician reports, inadequate supervision of residents, incomplete medical records, lack of personal care and hygiene supplies, frequent fighting between residents and staff, and unsanitary conditions.

In approximately July 1991 Susan M., who had been diagnosed as schizophrenic, moved into Royal where she lived for about two years until she requested a change and was moved to Parkside. In April 1993 while at Parkside, Susan hit and brandished a butter knife at its facility manager, Leonore Sese. Susan told the investigating police officer that she wanted to kill Sese, and in the officer's presence attempted to assault her. Susan also tried to strike the officer when he attempted to restrain her. As a result, Susan was committed to a mental hospital for 72 hours under Welfare and Institutions Code section 5150. Sese told the officer that Susan had prior outbursts of anger and minor violence, but was not receiving any medication.

After her release from the 72-hour commitment, Susan spent a month in an Antioch homeless shelter for the mentally ill. Priscilla and Sese felt that maintaining her in the shelter would "teach her a lesson." Thereafter, she returned to Parkside.

In June or July 1993 appellants moved Susan and other residents out of Parkside as part of a conversion of Parkside from a facility housing mentally disabled residents to one for developmentally disabled residents. The reimbursement rate to appellants was greater for developmentally disabled residents than for mentally disabled residents. Appellants moved Susan and two other former residents of their licensed facilities to their unlicensed single-family residence on Walters Way in Concord. Two other persons who had responded to a newspaper advertisement also resided there. According to appellants, each of the Walters Way residents signed an agreement stating that Walters Way was an independent living situation providing only room and board. According to Francisco, Walters Way was unstaffed because it did not provide care or supervision to its residents. Although appellants knew that Susan was a schizophrenic, had prior mental hospitalizations and could not manage her own money, they perceived her as "high functioning," and therefore suitable for Walters Way.

After Susan was transferred to Walters Way her county health services case manager, Valerie Irwin, told Sese she was concerned about the lack of

supervision there and wanted Susan moved back to Parkside. Sese said she did not want Susan at Parkside because she was afraid of her, and concerned that she would engage in violent behavior. Sese told Irwin Susan had thrown eggs all over her bedroom at Walters Way on one occasion, and the police had been called at least once. Although Susan had refused to take her medication for years, Irwin finally convinced her to do so, which she did for a while. Susan needed assistance taking her medication, and on occasion had threatened Sese, Irwin and her physician because she did not want to take it. She also needed reminding and encouragement to keep doctor's appointments. Irwin opined that Susan could not manage her own money.

On January 2, 1994, Susan called the Concord police to complain that a resident at Walters Way was a man dressed as a woman. An officer responded, but did not find sufficient cause to have Susan committed under Welfare and Institutions Code section 5150. Approximately 15 minutes after the officer left, Susan, using a total of six kitchen knives, stabbed to death Johann L., a transsexual resident at the residence, using the name Johanna. Over 120 stab wounds were inflicted. Susan told the arresting officer she was trying to stop Johanna from dressing like a woman. She described herself as schizophrenic, hallucinative, and delusional, and said she refused to take her medication. Other Walters Way residents told police that Susan had previously been violent and was upset about Johanna's transsexuality. At the time of the administrative hearing Susan was committed to a state mental hospital.

Respondent conducted an investigation and issued an accusation against appellants. Following an evidentiary hearing the administrative law judge issued a proposed decision, later adopted by respondent. The decision found that appellants inappropriately accepted and retained Susan at Walters Way at a time when she required care and supervision. Since they previously provided her services through their licensed adult residential facility, their familiarity with her need for care and supervision, and knowledge of her history of mental illness and violent tendencies, made appellants responsible for not accepting her as a room-and-boarder and thereby not placing her in a situation where she could become a danger to herself or others.

The decision also found that appellants' specific conduct in accepting and retaining Susan as a resident at Walters Way constituted conduct inimical to the health, safety, morals or welfare of residents receiving services. It determined: (1) appellants operated an unlicensed facility at Walters Way; (2) because appellants knew or should have known of Susan's potential for violence and her need for care and supervision, their decision to transfer her from their licensed facility to the unlicensed Walters Way was "extremely

reckless"; (3) appellants' decision to move Susan to Walters Way was prompted by a desire to transition to a more profitable developmentally disabled client base, and not due to any change or improvement in Susan's condition; (4) because appellants were licensees with knowledge of Susan's condition and need for care at the time she was accepted and retained as a resident at Walters Way, the exemption language under California Code of Regulations, title 22, section 80007, subdivision (a)(7) was inapplicable.

The licenses for Parkside and Royal were revoked and the Siosons were prohibited from licensure and/or employment in any facility licensed by respondent. Thereafter, the trial court, exercising its independent judgment, denied appellants' petition for writ of mandate.

## DISCUSSION

■ In an administrative mandate proceeding in which the trial court has exercised its independent judgment on the evidence, the trial court's factual determinations are conclusive on appeal if they are supported by substantial evidence. As to questions of law, appellate courts perform essentially the same function as trial courts in an administrative mandate proceeding, and the trial court's conclusions of law are reviewed de novo. (*Lewin* v. *St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 386-387 [146 Cal.Rptr. 892].)

### I

■ Appellants contend "[Respondent] Erred In Concluding That Appellants Were Operating An Unlicensed Community Care Facility."

In 1973 the Legislature enacted the California Community Care Facilities Act (the Act) (Health & Saf. Code, § 1500 et seq.),[2] "to establish a coordinated and comprehensive statewide service system of quality community care for mentally ill, developmentally and physically disabled, and children and adults who require care or services by a facility or organization issued a license or special permit pursuant to this chapter." (§ 1501; *McCaffrey* v. *Preston* (1984) 154 Cal.App.3d 422, 429 [201 Cal.Rptr. 252].) Unless exempt from licensure as specified in California Code of Regulations, title 22, section 80007, a license is required to operate a community care facility. (§ 1508.)

Section 1503.5 provides, in relevant part, "(a) A facility shall be deemed to be an 'unlicensed community care facility' and 'maintained and operated

---

[2]Unless otherwise indicated, all further statutory references are to the Health and Safety Code.

to provide nonmedical care' if it is unlicensed and not exempt from licensure and any one of the following conditions is satisfied: [¶] . . . [¶] (3) The facility accepts or retains residents who demonstrate the need for care or supervision, as defined by this chapter or the rules and regulations adopted pursuant to this chapter. [¶] . . . [¶] (b) No unlicensed community care facility, as defined in subdivision (a), shall operate in this state." California Code of Regulations, title 22, section 80001(u)(1) provides, " 'Unlicensed Community Care Facility' means a facility as defined in [section] 1503.5." California Code of Regulations, title 22, section 80001(u)(1)(D)(1) provides, "A facility which 'accepts or retains residents who demonstrate the need for care or supervision' includes, but is not limited to: [¶] A facility with residents requiring care and/or supervision, even though the facility is providing board and room only, or board only, or room only."

Appellants argue that "three conjunctive components" must be established before licensure under section 1503.5 and California Code of Regulations, title 22, section 80001(u)(1) is required. "First, there must be a 'facility' in operation. Second, it must not be exempt from licensure, and, finally, it must accept or retain residents who demonstrate the need for care and supervision. Since none of these elements was established at the administrative hearing, [respondent] erred in applying the statute, as did the trial court by sanctioning [respondent's] decision and action."

## A.

Appellants contend the Walters Way house was not an "unlicensed community care facility" because it did not provide nonmedical care and supervision activities. This contention fails under California Code of Regulations, title 22, section 80001(u)(1)(D)(1), which states that an unlicensed care facility need only *accept* or *retain* residents who require care and supervision; it need not provide such.

## B.

Appellants further contend that Walters Way was exempt from licensure under section 1505, subdivision (h) and California Code of Regulations, title 22, section 80007(a)(7) because it was a "house."

Section 1505 provides, in relevant part: "This chapter does not apply to any of the following: [¶] . . . [¶] (h) Any house, institution, hotel, homeless shelter, or other similar place that supplies board and room only, or room only, or board only, *provided that no resident thereof requires any element of care* as determined by the [director of social services]." (Italics added.)

California Code of Regulations, title 22, section 80007(a) provides, in relevant part, "The community care facility regulations contained in this division shall not apply to any of the following: [¶] . . . [¶] (7) Any house,

institution, hotel, homeless shelter, or other similar place that supplies board and room only, or room only, or board only, which provides no element of care and supervision, as defined in [section] 80001(c)(2)."

The licensing exemption is inapplicable if a resident of a facility requires care as determined by the director of social services. " 'Care and Supervision' means any one or more of the following activities provided by a person or facility to meet the needs of the clients: [¶] . . . [¶] (B) Assistance with taking medication, as specified in [section] 80075. [¶] . . . [¶] (D) Arrangement of and assistance with medical and dental care. [¶] (E) Maintenance of house rules for the protection of clients. [¶] . . . [¶] (G) Maintenance and/or supervision of client cash resources or property." (Cal. Code Regs., tit. 22, § 80001(c)(2).)

In this case, appellants knew or should have known at the time they transferred Susan to the unsupervised Walters Way facility that she had a history of schizophrenia and prior mental hospitalizations, had previously assaulted Sese with a knife, needed assistance taking her medication, and could not manage her own money. This constitutes substantial evidence that Susan required care and supervision while a resident at Walters Way. Consequently, it was not exempt from licensure.

## II

■ Appellants argue that section 1505, subdivision (h) is unconstitutionally vague on its face and as applied because it gives the director of social services unfettered discretion to determine whether a resident needs care, and therefore whether the facility is exempt from licensure.

We need not reach this issue because appellants' conduct establishes an independent ground for license revocation not dependent on section 1505, subdivision (h).

Section 1550 provides, in relevant part, "The department may deny an application for, or suspend or revoke, any license, . . . issued under this chapter upon any of the following grounds and in the manner provided in this chapter: [¶] . . . [¶] (c) Conduct which is inimical to the health, morals, welfare, or safety of either an individual in, or receiving services from, the facility or the people of the State of California."

Here, respondent found that "[Appellants'] specific conduct in accepting and retaining [Susan] as a resident at Walters Way . . . constituted conduct inimical to the health, safety, morals or welfare of residents receiving

services." Since substantial evidence supports this finding, appellants' license was properly revoked under section 1550, subdivision (c).

## III

Next, appellants argue that respondent's interpretation of sections 1503.5 and 1505, subdivision (h) is inconsistent with Civil Code section 54.1, providing disabled persons equal access to housing. They argue that respondent's interpretation of sections 1503.5 and 1505, subdivision (h) would force a landlord to choose between accepting a mentally disabled tenant as required under Civil Code section 54.1, or denying such person housing under section 1503.5.

Civil Code section 54.1, subdivision (b)(1) provides that disabled persons are entitled to full and equal access, as other members of the public, to housing accommodations, "subject to the conditions and limitations established by law, or state or federal regulation . . . ." Sections 1503.5 and 1505, subdivision (h) provide such conditions or limitations. Consequently, the statutes are not in conflict.

## IV

Finally, appellants argue that respondent should have been barred by laches because it unjustifiably delayed in prosecuting the infractions against them dating back to 1989. Respondent correctly rejoins that appellants waived this defense by failing to raise it at the administrative hearing. (See *Bohn* v. *Watson* (1954) 130 Cal.App.2d 24, 37 [278 P.2d 454] [failure to raise statute of limitations defense at administrative hearing waives issue on review of administrative proceedings].)

### DISPOSITION

The order denying appellants' petition for writ of mandate is affirmed.

Peterson, P. J., and Jones, J., concurred.